IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LESLIE MESHELL                                                          PLAINTIFF

v.                              Case No. 1:15-cv-1017

CITY OF EL DORADO; THE EL DORADO
CIVIL SERVICE COMMISSION; and BILLY
WHITE, in both his official and individual
capacities                                                             DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment.  (ECF No. 20).  Plaintiff
Leslie Meshell filed a response.  (ECF No. 27).  Defendants filed a reply.  (ECF No. 30).  The Court
finds the matter ripe for consideration.

## I.  BACKGROUND

This case is an employment-discrimination action brought under Title VII of the Civil Rights
Act of 1964 and the Arkansas Civil Rights Act ("ACRA").  Plaintiff is a female who previously
worked for Separate Defendant City of El Dorado as a dispatcher for the El Dorado Police
Department ("EDPD").  Plaintiff asserts a claim of hostile-work-environment sexual harassment in
connection with Separate Defendant Billy White's alleged behavior toward Plaintiff, and a claim of
constructive termination.  Plaintiff also asserts a claim under the Arkansas common-law tort of
outrage.

In 2012, Plaintiff reached out to Separate Defendant White, among others, in hopes that he
would assist her in obtaining reemployment as a dispatcher with the EDPD.[1]  At this time, Separate
Defendant White was the captain of detectives at the EDPD.  Sometime after this initial

---

[1] Plaintiff was twice previously employed at the EDPD and each time voluntarily left her position.

communication, Separate Defendant White asked Plaintiff if she wanted to read short stories that he wrote.  Plaintiff agreed, and Separate Defendant White emailed two sexually explicit stories to her. Plaintiff met Charlie Phillips, captain of the Special Investigation Division of the EDPD, in a local grocery store and discussed the short stories with him because she wanted him to know that the stories had been sent and did not want them to harm her chances of being rehired.  Phillips indicated that everything would be fine and that Separate Defendant White would not continue to send stories to Plaintiff.  Following this conversation, Separate Defendant White did not send any more stories to Plaintiff.

On September 17, 2012, Plaintiff was rehired as a dispatcher for the EDPD.  Sometime after Plaintiff was rehired, Separate Defendant White became the chief of police at the EDPD.  From July 10, 2013 through December 12, 2013, Plaintiff and Separate Defendant White communicated via Facebook messaging, email, and text messaging, engaging in both personal and workplace-related discussions.[2]  Also during this time, Plaintiff and Separate Defendant White had several interactions at work which Plaintiff asserts were harassing, including him occasionally standing behind her work station and a separate exchange in which he told her that she "needed to get floaties and put them in the back of her pants so that [she] would have a butt because [she] don't fill out [her] pants very well."  (ECF No. 19).  Plaintiff did not ask Separate Defendant White to stop his conduct or otherwise indicate to him that his conduct was offensive, and she did not file a complaint with the EDPD regarding his behavior.[3]

On March 3, 2014, Plaintiff's attorney contacted the mayor of El Dorado, Arkansas, to notify him that Plaintiff was alleging sexual harassment in connection with her employment at the EDPD. The mayor called a meeting of Separate Defendant El Dorado Civil Service Commission, which

---

[2] Separate Defendant White sent all emails and social media messages using the pseudonym "Trevor McBrayer." Plaintiff testified that she was always aware that Trevor McBrayer was Separate Defendant White.

[3] Plaintiff testified that she did not complain in any way about Separate Defendant White's behavior because she was afraid she would lose her job as a result.

questioned Plaintiff and reviewed all related documents on March 5, 2014.  On March 6, 2014, the commission determined that Separate Defendant White's behavior did not constitute harassment, sexual or otherwise, but nonetheless ordered him to undergo employer/employee communications training courses.[4]  On the same day, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Fair Employment Practices Agency ("FEPA").  Also on March 6, 2014, Kevin Holt, a captain in the EDPD, began working to rearrange Plaintiff's shifts so that she could work nights, in order to minimize her contact with Separate Defendant White.  On March 12, 2014, Plaintiff resigned from the EDPD.

On April 3, 2014, the Arkansas Department of Workforce Services determined that Plaintiff was not harassed and quit her job voluntarily without good cause connected to the work, thus disqualifying her for insurance through the City of El Dorado.  Plaintiff appealed this decision to the Arkansas Appeal Tribunal, which affirmed the decision on May 1, 2014.  Plaintiff then appealed to the Arkansas Board of Review, which affirmed the decision on June 3, 2014.

On March 8, 2015, the EEOC provided Plaintiff with a notice-of-rights letter.  On April 2, 2015, Plaintiff filed suit in this Court against Defendants.  In her complaint, Plaintiff alleges that Defendants' actions constituted sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act, and that Defendants constructively discharged her by failing to protect her from being ostracized by co-workers after she filed her EEOC charge.  She also claims that Defendants' actions were outrageous under the Arkansas common-law tort of outrage.  Defendants assert that they are entitled to summary judgment on all claims.

## II.  STANDARD

The standard for summary judgment is well established.  When a party moves for summary

---

[4] Separate Defendant El Dorado Civil Service Commission noted that certain communications between Plaintiff and Separate Defendant White were inappropriate for the chief of police to engage in, but found that the two most concerning communications—the sexually explicit stories—occurred before Plaintiff was employed at the police department and before Separate Defendant White became the chief of police.  The commission also found that Plaintiff solicited the short stories.

judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Id.* at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 256.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).  Accordingly, the Court applies the same summary judgment standard to discrimination cases as it does to all others.

### III.  DISCUSSION

As an initial matter, the Court must address the parties' statements of material facts.  Plaintiff filed a Disputed Statement of Facts (ECF No. 29) along with her response to Defendants' summary

4

judgment motion.  Plaintiff's statement of facts asserts no facts and contains no citations to the record.  Instead, it presents ten questions of fact which Plaintiff states a jury should determine. Defendants argue that this is insufficient under Federal Rule of Civil Procedure 56(c) and Local Rule 56.1 to dispute any of the facts set forth in Defendants' own statement of material facts, and therefore, Defendants submit that their Statement of Undisputed Facts (ECF No. 19) should be deemed admitted for summary judgment purposes.

Federal Rule of Civil Procedure 56(c)(1) provides that a party asserting a genuine dispute of material fact must support the assertion by either citing to materials in the record or by showing that the cited materials do not establish the absence of a genuine dispute.  Federal Rule of Civil Procedure 56(e) states that a court may deem undisputed a party's asserted fact if it is not properly controverted by the other party pursuant to Rule 56(c).  Similarly, Local Rule 56.1(c) states that all facts asserted in the moving party's statement of facts shall be deemed admitted if they are not controverted by the nonmoving party's own statement of facts.

The Court finds that Plaintiff has failed to controvert any of Defendants' asserted facts for two reasons.  First, Plaintiff's statement of facts fails to satisfy Rule 56(c)(1) because it contains no citations to the record and does not show that Defendants' cited materials fail to establish the absence of a genuine dispute.  Second, Plaintiff's statement of facts lists no facts at all, and instead presents questions of fact which she asserts should be submitted to a jury.  Thus, the Court finds that Plaintiff has failed to controvert Defendants' asserted facts under Federal Rule of Civil Procedure 56(c) and Local Rule 56.1.  Accordingly, all facts asserted in Defendants' statement of facts are deemed admitted for summary judgment purposes.

The Court will now turn its analysis to Plaintiff's claims of hostile-work-environment sexual harassment, constructive discharge, and outrage.

### A. Hostile Work Environment

Plaintiff brings a Title VII claim against Separate Defendant City of El Dorado, Separate Defendant El Dorado Civil Service Commission, and against Separate Defendant White in both his individual and official capacities.[5]  Defendants argue that they are entitled to summary judgment.

### 1. Separate Defendant White in His Individual Capacity

Defendants argue that summary judgment is appropriate on Plaintiff's Title VII claim against Separate Defendant White in his individual capacity.  The Court agrees.

The Eighth Circuit has instructed that Title VII claims are applicable to employers, but not to individuals.  *See Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) (noting that Title VII provides for actions against employers but not supervisors); *Powell v. Yellow Book USA*, 445 F.3d 1074, 1079 (8th Cir. 2006) ("Title VII addresses the conduct of employers only and does not impose liability on coworkers.").  Therefore, Plaintiff's Title VII hostile-work-environment claim against Separate Defendant White in his individual capacity must fail because there is no individual liability under Title VII.

Accordingly, the Court finds that Defendants' summary judgment motion should be granted as to Plaintiff's Title VII claim against Separate Defendant White in his individual capacity.

### 2. Separate Defendants City of El Dorado, El Dorado Civil Service Commission, and White in His Official Capacity

Plaintiff claims that Defendants' unlawful employment practices subjected her to sexual harassment and constituted a hostile work environment in violation of Title VII.  "The question of whether an environment is sufficiently hostile to be actionable is a legal question, and, like any legal question, is a matter for the court to decide.  In other words, a showing of some minimal level of

---

[5] The Court incorporates Plaintiff's ACRA claim into its Title VII analysis.  *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000) (applying the same framework for hostile-work-environment claims under both Title VII and ACRA).

harassment is necessary before a case is submissible to a jury." *Jackson v. Flint Ink N. Am. Corp.*, 382 F.3d 869, 869 (8th Cir. 2004).

Title VII provides, in relevant part, that an employer[6] may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). A successful hostile-work-environment claim under Title VII must show that: (1) the plaintiff belongs to a protected group; (2) the plaintiff experienced unwelcome harassment; (3) there was a causal link between the harassment and the plaintiff's membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment. *Beard v. Flying J, Inc.*, 266 F.3d 792, 797 (8th Cir. 2001). When the harassment was at the hands of a co-worker, rather than a supervisor, a fifth *prima facie* element must be shown: that the employer knew or should have known about the harassment and failed to take proper action. *See Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). If a plaintiff can make a *prima facie* case of supervisor harassment, the employer is generally vicariously liable for the supervisor's conduct unless the employer can establish that it is entitled to the *Ellerth/Faragher* affirmative defense.[7]

Defendants' brief sets out the five-element *prima facie* standard for co-worker harassment, which Plaintiff agrees is applicable to this case. However, Defendants' and Plaintiff's briefs also argue whether the *Ellerth/Faragher* affirmative defense to supervisor harassment is available to Defendants. Under this case's unusual set of facts, the Court finds that an analysis under both *prima facie* burdens is appropriate. Plaintiff alleges one instance of harassment which occurred when

---

[6] Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).

[7] The *Ellerth/Faragher* affirmative defense relieves employers of liability for supervisor harassment if the employer has taken no tangible employment action against the harassed employee and if the employer can show: (1) that it exercised "reasonable care to prevent and correct promptly any sexually harassing behavior;" and (2) that the employee "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).

Separate Defendant White had no supervisory capacity over her, and other instances of harassment which occurred when Separate Defendant White had supervisory capacity over her.[8]  The Court will jointly conduct the co-worker and supervisor harassment analyses through the first four *prima facie* factors, and then will divide its analysis.

Defendants do not dispute that Plaintiff is a member of a protected class, and the Court finds that she is.  Defendants do, however, argue that Plaintiff cannot establish the remaining requisite elements.  Therefore, Defendants argue that Plaintiff cannot establish a *prima facie* case of hostile-work-environment sexual harassment and that they are entitled to summary judgment as a matter of law.

### a. Unwelcome Harassment

Defendants argue that Plaintiff cannot establish that she experienced unwelcome harassment.

The conduct at issue must be "unwelcome" in that the plaintiff regarded it as undesirable or offensive and neither solicited nor invited it.  *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999).  The proper inquiry is whether the plaintiff indicated by her conduct that the alleged harassment was unwelcome.  *Id.*  A plaintiff cannot establish that she experienced unwelcome harassment if she fails to complain about the alleged incident.  *See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 632 (8th Cir. 2000).  Generally, fear of retaliation is not a proper excuse for an employee's failure to report sexual harassment.  *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 422 (8th Cir. 2010).  However, an employee can be excused for a delay in reporting harassment if the employee can demonstrate a truly credible threat of retaliation.  *Id.*

---

[8] Defendants' statement of facts, which the Court deems admitted for summary judgment purposes, states that when Plaintiff was applying and subsequently rehired as a dispatcher by the EDPD, Separate Defendant White was the captain of detectives, a position which had no supervisorial authority over Plaintiff.  (ECF No. 19).  Once Separate Defendant White became the chief of police, he became one of Plaintiff's supervisors.  *See Steck v. Francis*, 365 F. Supp. 2d 951, 962 n.4 (N.D. Iowa 2005) (stating that police chiefs are supervisors for purposes of Title VII harassment claims by police employees).

Plaintiff alleges four instances of harassment by Separate Defendant White:  (1) the short stories sent prior to her rehire with the EDPD; (2) communications via Facebook messaging, email, and text messaging; (3) Separate Defendant White occasionally "lurking" behind Plaintiff at her work station; and (4) the "floaties" remark.  The short stories were sent to Plaintiff prior to her rehire with the EDPD and when Separate Defendant White was the captain of detectives.   Without providing specific dates, Plaintiff alleges that the three remaining instances occurred during her relevant employment with the EDPD—from September 2012 through March 2014—after Separate Defendant White became the chief of police.  Defendants argue that Plaintiff never complained about or otherwise indicated that these four instances constituted unwelcome behavior, and thus she cannot satisfy this *prima facie* element.

Defendants argue that the short stories were not unwelcome because Plaintiff solicited the stories when she agreed to read them.  Plaintiff concedes that she agreed to read the stories, but maintains that the particular stories sent by Separate Defendant White were unwelcome because she did not agree to read sexually explicit stories.  Defendants argue that Plaintiff admitted knowing at that time that Separate Defendant White previously emailed sexually explicit stories to at least one other female in the EDPD.  Based on this, Defendants argue that Plaintiff knew that the stories she agreed to read were sexual in nature.

The undisputed facts show that Plaintiff agreed to the read short stories, with no specification as to the type of story.  The undisputed facts also show that at the time Plaintiff agreed to read the stories, she was aware that Separate Defendant White previously sent sexually explicit stories to another female employee in the EDPD.  However, the Court will not join Defendants in inferring from these two undisputed facts that Plaintiff had knowledge of the stories' sexually explicit nature when she agreed to read them.  Moreover, Plaintiff discussed the stories with Phillips only a few days later, and received assurances that no more stories would be sent.  Viewing the facts in the light most

favorable to Plaintiff, the Court finds that a jury may conclude that the short stories were unwelcome co-worker harassment.

Defendants argue that the social media messages were not unwelcome because Plaintiff did not complain about them as they occurred and because she consensually participated in the messaging from July 2013 through December 2013. Defendants also argue that the "floaties" comment and Separate Defendant White's "lurking" were not unwelcome because Plaintiff did not complain about them when they occurred and because they do not rise to the level of actionable harassing conduct under Title VII.

There is no evidence that indicates that Plaintiff considered herself subject to unwelcome harassment related to the three alleged instances prior to her March 3, 2014 complaint lodged with the city. *See Stuart*, 217 F.3d at 632 (holding that retroactive complaints alone are insufficient to establish past unwelcome harassment); *Pimentel v. St. Louis Pub. Sch.*, No. 4:08-cv-1477 TIA, 2011 WL 128788, at *12 (E.D. Mo. Jan. 14, 2011) (finding the plaintiff's sole complaint of sexual harassment to be insufficient to show she found herself subjected to unwelcome harassment during the eight months prior to the date of the complaint). The proper inquiry as to whether an individual considers behavior to be "unwelcome" is whether he or she indicates as such through his or her own conduct. *Scusa*, 181 F.3d at 966. Plaintiff did not complain or otherwise indicate disapproval to Separate Defendant White or another supervisor in the EDPD regarding the three instances when they occurred.[9] Plaintiff testified that she did not complain or otherwise indicate that the instances

---

[9] Plaintiff argues that she at one point "gently attempted to discourage" the social media communication by telling Separate Defendant White that she was moving in with a man. (ECF No. 28). The Court is unpersuaded that this constitutes a complaint or other indication that the social media communications were unwelcome. At no time did Plaintiff tell Separate Defendant White that she found his communications to be offensive or inappropriate, or that the communications should end. In fact, Plaintiff actively engaged in the social media communications with Separate Defendant White—both before and after this exchange—and occasionally sent suggestive messages to him. For example, she messaged that her breasts "have a mind of their own," and stated that her attire was "just for [him]." (ECF No. 19-1). This further supports the Court's determination that Plaintiff failed to consider herself subjected to unwelcome harassment prior to March 3, 2014. *See Scusa*, 181 F.3d at 967 (finding that the plaintiff did not perceive the environment as offensive when she engaged in the same type of conduct that she complained of).

were unwelcome because she was afraid she would lose her job.  However, Plaintiff has offered no evidence that a truly credible threat of retaliation existed.[10]  Plaintiff's March 3, 2014 complaint to the mayor was the first time she indicated that these instances were unwelcome.  Thus, the record does not support a finding that, prior to March 3, 2014, Plaintiff found herself subjected to unwelcome harassment regarding the three instances.  Therefore, Plaintiff cannot show that these instances of alleged supervisor harassment were unwelcome.

### b. Causal Link Between Harassment and Sex

Defendants argue that Plaintiff cannot establish that any harassment suffered was based on her sex.

"Harassing conduct constitutes discrimination based on sex when members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  *Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 737 (8th Cir. 2000).  A plaintiff is not required to show that members of only one sex were subjected to harassment; it is sufficient to show that members of one sex were the primary targets of harassment.  *Quick v. Donaldson Co.*, 90 F.3d 1372, 1378 (8th Cir. 1996).

Defendants argue that Plaintiff cannot show that the short-story instances of harassment were based on her sex.  Defendants argue specifically that "the short stories do not constitute workplace harassment."  (ECF No. 18).  The record shows that Separate Defendant White sent sexually explicit stories to two female employees of the EDPD, including Plaintiff.  Nothing in the record indicates that similar stories were ever sent to male employees of the EDPD.  Viewing the facts in the light most favorable to Plaintiff, the Court finds that a jury may conclude that the incident involving the short stories was based on sex.

---

[10] In fact, the EDPD's harassment policy contained an explicit anti-retaliation provision.  This cuts against Plaintiff's fear of retaliation.  *See Weger v. City of Ladue*, 500 F.3d 710, 725 (8th Cir. 2007) (stating that anti-retaliation policies call fears of retaliation into question).

Defendants also argue that the social media and text communications, the "floaties" comment, and Separate Defendant White standing behind Plaintiff's work station were not based on Plaintiff's sex. Some of the social media communications were not sexual at all, including discussion about the EDPD and its employees, as well as friendly, personal conversations. However, some of the social media messages discussed Plaintiff's breasts, and one message asked whether Plaintiff had ever participated in a wet t-shirt contest. Also, the "floaties" comment was explicitly directed at Plaintiff's behind. Separate Defendant White standing behind Plaintiff's work station is the only one of these three instances that Plaintiff cannot show to be based on her sex. She has not shown that Separate Defendant White stood exclusively behind women's work stations, nor did she explain how the conduct is in any way related to her sex.[11] Viewing the facts in the light most favorable to Plaintiff, the Court finds that a jury may conclude that some of these incidents were based on sex.

### c. Affected a Term, Condition, or Privilege of Employment

Defendants argue that Plaintiff cannot establish that harassment affected a term, condition, or privilege of her employment.

Title VII does not prohibit all verbal or physical harassment and "is not a general civility code for the American Workplace." *Nitsche*, 446 F.3d at 846. "Harassment is actionable if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 (8th Cir. 1998) (internal quotation marks omitted). To clear the high threshold of actionable harm, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Scusa*, 181 F.3d at 967 (stating that actionable

---

[11] Plaintiff's brief argues that Separate Defendant White "leer[ed] and look[ed] down [her] dress or blouse," but no evidence in the record suggests that Separate Defendant White did anything other than stand behind Plaintiff's work station. The closest any evidence comes to supporting this statement is Plaintiff's deposition testimony, which states she "felt like he was looking at me" when he stood behind her work station. (ECF No. 19-1).

harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment") (internal quotation marks omitted). "Simple teasing, offhand comments, and isolated incidents generally cannot amount to severe or pervasive harassment." *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). These demanding standards are designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (internal quotation marks omitted). Although isolated incidents generally do not constitute severe or pervasive harassment, extremely serious isolated incidents can amount to actionable harm. *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (citing *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 454-57 (8th Cir. 2001)).

The harassing conduct must be enough to create a hostile environment from both the objective standpoint of a reasonable viewer and from the plaintiff's subjective standpoint. *Phillips*, 156 F.3d at 888. In determining whether conduct objectively creates a hostile environment, courts examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

The Court finds that the alleged instance of co-worker harassment—the short stories—do not rise to an actionable level of severity and pervasiveness which altered the conditions of Plaintiff's employment and created an abusive working environment. The two short stories were sent on one occasion, and no other stories were sent after Plaintiff's discussion with Phillips. The stories were certainly sexually explicit, which could cause offense or embarrassment, but they were not physically or overtly threatening. This instance of harassment did not involve any actual physical contact between Plaintiff and Separate Defendant White. The stories did not alter the conditions of Plaintiff's employment because they did not prevent Plaintiff's rehire and did not impact her ability to perform her job.

13

Separate Defendant White emailing sexually explicit short stories to Plaintiff constitutes decidedly immature, unprofessional, and unpleasant behavior, but this isolated incident is not egregious enough to satisfy the high burden for actionable harassment under Title VII.  *See, e.g.*, *Moring*, 243 F.3d at 454-57 (finding an isolated incident to be severe and pervasive where, during a business trip, a supervisor clothed only in underwear would not leave the plaintiff's hotel room for several hours, insisted that she "owed" him for her job, attempted to kiss her, and touched her thigh). The Court finds that Plaintiff is unable to show that the isolated incident involving short stories was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

The Court also finds that the alleged instances of supervisor harassment—the social media, email, and text communications; the "floaties" comment; and Separate Defendant White standing behind Plaintiff's work station—do not rise to an actionable level of severity and pervasiveness which altered the conditions of Plaintiff's employment and created an abusive working environment. The Eighth Circuit has rejected hostile-work-environment claims based on facts equally or more egregious than those in this case.  *See, e.g.*, *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010) (finding conduct over a two-year period to not be sufficiently severe or pervasive where it included the defendant pulling the plaintiff's hair, wiping his hand across the plaintiff's breast, responding in an angry and threatening manner to the plaintiff rejecting his suggestion that they be "more than friends," and spreading a rumor that the plaintiff performed oral sex on him); *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (finding no sufficiently severe or pervasive conduct where a supervisor occasionally rubbed the plaintiff's shoulders and back, called her "baby doll" during a phone call, accused her of not wanting to be "one of [his] girls," suggested that she should be in bed with him and a Mai Tai in Florida, and insinuated that she could advance in the company if she "got along" with him); *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 977-78, 980 (8th Cir. 2003) (finding conduct over a two-year period to

14

be inappropriate, but not sufficiently severe or pervasive, where it included regular calls to the plaintiff's home, frequent visits to her office, discussions about relationships with his wife and other women, touching the plaintiff's arm, saying he "loved" her and she was "very special," placing romance novels in her faculty mailbox, and invading her personal space).

The three instances of supervisor harassment could cause offense or embarrassment, but they were not physically or overtly threatening. They involved no physical contact. They did not alter the conditions of Plaintiff's employment because they did not unreasonably impact her ability to perform her job.[12]   The allegations, taken both individually and collectively, are not sufficiently severe or pervasive under Eighth Circuit precedent.

Moreover, Plaintiff's claim must fail because there is no evidence that she considered these three allegations of harassment to be subjectively offensive prior to her March 3, 2014 complaint to the mayor.  *See Stuart*, 217 F.3d at 633 (holding that retroactively complaining months after harassing incidents occurred is insufficient to establish that the plaintiff considered herself subject to unwelcome harassment prior to the date of the complaint); *Pimentel*, No. 4:08-cv-1477 TIA, 2011 WL 128788, at *12 (same); *see also Faragher*, 524 U.S. at 787 (stating the complainant must show sexual harassment to be both objectively and subjectively offensive).  The proper inquiry of whether Plaintiff found herself subjected to offensive behavior is whether she indicated by her own conduct that the alleged harassment was unwelcome.  *Scusa*, 181 F.3d at 966.  As discussed above, she did not complain to Separate Defendant White or to any other supervisor in the EDPD regarding these three instances as they occurred.  Instead, her first indication that the conduct was unwelcome came months later, on March 3, 2014.[13]  Based on Plaintiff's failure to complain of these three incidents as

---

[12] Plaintiff's brief argues that she was unable to effectively perform her job due to the harassing conduct.  The record does not indicate how the "floaties" comment and the "lurking" affected Plaintiff's ability to work, but Plaintiff did testify that Separate Defendant White sent her five text messages while she was on duty, answering 911 calls.  (ECF No. 19-1).  Archives of the messages appear to show that Plaintiff did not respond to these five messages, and she does not attempt to explain how five sporadic text messages unreasonably impeded her ability to perform her duties.

[13] As noted above, Plaintiff actively engaged in the social media communications with Separate Defendant White,

they occurred, the Court finds that she failed to consider herself subject to harassment prior to the date of her complaint to the mayor.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that the alleged instances of social media and text communications, the "floaties" comment, and Separate Defendant White standing behind Plaintiff's work station do not rise to an actionable level of severity and pervasiveness which altered the conditions of Plaintiff's employment and created an abusive working environment. Therefore, Plaintiff cannot satisfy this *prima facie* element.

The Court's analysis must diverge at this point. First, the Court will address the fifth *prima facie* element with respect to the instance of short story co-worker harassment. Then the Court will address the *Ellerth/Faragher* affirmative defense with respect to the three instances of supervisor harassment.

### d. Awareness of Harassment and Failure to Take Action

Defendants argue that Plaintiff cannot establish their awareness of the harassment and that they failed to take proper remedial action.

"Sexual harassment . . . is a violation of Title VII if the employer knew or should have known of the harassment and failed to take immediate and appropriate action." *Quick*, 90 F.3d at 1378. "Prompt remedial action shields an employer from liability when the harassing conduct is committed by a co-worker rather than by a supervisor." *Meriwether*, 326 F.3d at 994. Courts consider several factors in assessing the reasonableness of an employer's remedial measures: "the temporal proximity between the notice and remedial action, the disciplinary or preventive measures taken, and whether the measures ended the harassment." *Id.*

Plaintiff contends that Defendants were first made aware of the harassment when Plaintiff

---

and occasionally sent suggestive messages to him. For example, she messaged that her breasts "have a mind of their own," and stated that her attire was "just for [him]." (ECF No. 19-1). This further supports the Court's determination that Plaintiff failed to consider herself subjected to harassment prior to March 3, 2014. *See Scusa*, 181 F.3d at 967 (finding that the plaintiff did not perceive the environment as offensive when she engaged in the same type of conduct that she complained of).

discussed the short stories with Phillips in September 2012.  Plaintiff argues that Phillips failed to communicate the complaint to his supervisors so they could conduct an investigation or take corrective action.  Plaintiff also argues that the Civil Service Commission's corrective measures in 2014 were ineffective because Separate Defendant White had no directive as to what type of training he was to undergo, was not required to report the completion of training to anyone, and likely did not complete any training.[14]

Defendant concedes that Plaintiff and Phillips discussed the stories in a grocery store, but argues that Phillips "took the conversation . . . not as a complaint, but rather, as 'friends talking,' and remembers . . . [them] 'laughing some about it.'"  (ECF No. 30).  Phillips testified that he did not consider the conversation to be a complaint for several reasons, including the fact that Plaintiff was not an EDPD employee at the time and the fact that the stories were sent from a pseudonym email account that did not identify Separate Defendant White as the sender.

The undisputed facts show that prior to her reemployment with the EDPD, Plaintiff encountered Phillips in a grocery store in Strong, Arkansas.  She and Phillips discussed the stories, and he told her that everything would be fine and that Separate Defendant White would not continue to send stories to her.  The record shows that Phillips did not report the short stories to his supervisors, and no investigation was conducted.  No other short stories were sent to Plaintiff.  The record also shows that the EDPD's harassment policy provided several steps for employees to report harassment, including first telling the harasser that their conduct is unwelcome and offensive, and then reporting the harassing conduct to a supervisor in the EDPD.

The Court finds that Plaintiff interpreted her discussion with Phillips to be a valid complaint of sexual harassment, while Phillips interpreted the discussion as a friendly discussion and did not consider Plaintiff to be making a complaint.  Viewing the evidence in the light most favorable to

---

[14] The record reflects that Separate Defendant White completed five training courses involving the internet and communication skills after the commission's ruling.  (ECF No. 19-7).

Plaintiff, the Court cannot determine as a matter of law whether Defendants were sufficiently put on notice of co-worker harassment in September 2012, and subsequently failed to take reasonable remedial action.

### e. *Ellerth/Faragher* **Affirmative Defense**

Defendants argue that if Plaintiff is able to make a *prima facie* case for hostile-work-environment supervisor harassment, the *Ellerth/Faragher* affirmative defense applies to relieve Separate Defendant City of El Dorado of liability.  Plaintiff argues in response that the availability of the *Ellerth/Faragher* affirmative defense is a question of fact for the jury to determine.  As discussed above, the Court finds that Plaintiff is unable to establish all requisite *prima facie* elements for supervisor harassment, and thus it is not necessary for the Court to determine whether the *Ellerth/Faragher* affirmative defense is available to Separate Defendant City of El Dorado.

### f. Conclusion

As discussed above, the Court finds that Plaintiff cannot satisfy all requisite elements of her hostile-work-environment sexual harassment claims.  Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be granted as to Plaintiff's Title VII hostile-work-environment sexual harassment claims against Separate Defendants City of El Dorado, El Dorado Civil Service Commission, and White in his official capacity.

### B. Constructive Discharge

Plaintiff alleges that Defendants constructively discharged her by taking no remedial action to protect her from "unwanted harassment . . . from fellow officers and fellow dispatchers" after she made a harassment claim with the mayor against Separate Defendant White.  (ECF No. 28).  She maintains that this scrutiny from co-workers caused her "inability to work in a safe work environment for the City of El Dorado."  (ECF No. 1).

"To prove a constructive discharge [under Title VII], an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing [her] to

18

quit." *Alvarez*, 626 F.3d at 418. Evidence of the employer's intent can be proven by "direct evidence or through evidence that the employer could have reasonably foreseen that the employee would quit as a result of its actions." *Sanders v. Lee Cnty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012). The employee must also give the employer a reasonable opportunity to resolve the intolerable working condition before quitting. *Id.*

Additionally, to establish constructive discharge, a plaintiff must demonstrate that a reasonable person would find the working conditions intolerable. *Tatom v. Georgia-Pac. Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). "The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Id.*

Plaintiff argues that she "was essentially ostracized by her co-workers for being the one who blew the whistle on Chief Billy White . . . [and] the City did nothing to protect [her] from the unwanted harassment she received from fellow officers and fellow dispatchers." (ECF No. 28). In support of this, Plaintiff cites to two pages from her deposition, but the cited pages are not included in the record. Nothing in the record supports Plaintiff's claims that her co-workers harassed her following the filing of her harassment complaint with the city. Moreover, nothing in the record demonstrates that Defendants deliberately created these allegedly intolerable working conditions, or that they could reasonably have foreseen that Plaintiff would resign as a result. Additionally, Plaintiff makes no argument and presents no evidence that a reasonable person would find the alleged working conditions intolerable.

Even assuming *arguendo* that Plaintiff can establish that Defendants deliberately created working conditions that a reasonable person would find intolerable, nothing in the record suggests

that Plaintiff gave Defendants a reasonable opportunity to correct the conditions before she quit.[15]  In fact, Defendants do not appear to have ever been made aware of the alleged ostracizing harassment from Plaintiff's co-workers.  The record indicates that Plaintiff only complained on March 3, 2014 about Separate Defendant White's behavior, and Defendants took action regarding that complaint.  Without any knowledge of the unreported incidents of co-worker harassment, Defendants did not have a reasonable opportunity to correct the allegedly intolerable conditions before Plaintiff resigned nine days later.

The Court finds that Plaintiff's constructive discharge claim must fail.  Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be granted as to Plaintiff's constructive discharge claim.

**C. State-Law Claims**

Plaintiff alleges that Defendants carried out discriminatory employment practices that violated ACRA and constituted the Arkansas common-law tort of outrage.

As discussed above, the Court finds that Plaintiff is unable to make a *prima facie* case for her Title VII claim of hostile-work-environment sexual discrimination.  Title VII and ACRA utilize the same analytical framework for hostile-work-environment sexual discrimination claims.  S*ee Henderson*, 217 F.3d at 615 n.3.  Because of this, the Court finds that Plaintiff is also unable to make a *prima facie* showing for sexual harassment under ACRA.  Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be granted as to Plaintiff's ACRA claim against Separate Defendants City of El Dorado, El Dorado Civil Service Commission, and White in his official capacity.  Although the parties' briefs do not discuss Plaintiff's ACRA claim against Separate Defendant White in his individual capacity, the Court finds that summary judgment should also be

---

[15] Plaintiff lodged her complaint with the mayor on March 3, 2014, and the Civil Service Commission meeting occurred on March 5, 2014.  Based on Plaintiff's allegations that her co-workers ostracized her after her complaint to the mayor, it logically follows that the alleged co-worker harassment began on March 3, 2014, at the earliest.  Plaintiff subsequently resigned on March 12, 2014.  Viewing the facts as generously to Plaintiff as possible, she resigned nine days after the alleged co-worker harassment began.

granted on this claim because, like Title VII, ACRA does not attach liability to individuals. *See Richardson v. City of Pine Bluff, Ark.*, No. 5:05-cv-00179 SWW, 2006 WL 3388341, at *1 (E.D. Ark. Nov. 21, 2006).

To make a *prima facie* case for the Arkansas common-law tort of outrage, a plaintiff must establish the following four elements:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civil community; (3) the actions of the defendant were the cause of plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Kelley v. Georgia-Pac. Corp.*, 300 F.3d 910, 912 (8th Cir. 2002) (citing *McQuay v. Guntharp*, 331 Ark. 466, 470, 963 S.W.2d 583, 585 (1998)).  To determine if conduct is "extreme and outrageous," courts look at "the conduct at issue; the period of time over which the conduct took place; the relation between the plaintiff and defendant; and defendant's knowledge that plaintiff is particularly susceptible to emotional distress by reason of some physical or mental peculiarity." *Doe v. Wright*, 82 F.3d 265, 269 (8th Cir. 1996) (citing *Hamaker v. Ivy*, 51 F.3d 108, 111 (8th Cir. 1995)). A plaintiff does not meet the burden if her complaint merely describes "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Seals v. Corr. Med. Servs., Inc.*, 473 F. Supp. 2d 912, 925 (E.D. Ark 2007) (quoting *Ingram v. Pirelli Cable Corp.*, 295 Ark. 154, 158, 747 S.W.2d 103, 105 (1988)).

"[T]he standard that a plaintiff must meet in order to satisfy the elements of outrage in Arkansas 'is an exceptionally high one.'" *Kelley*, 300 F.3d at 912 (quoting *Poindexter v. Armstrong*, 934 F. Supp. 1052, 1057 (W.D. Ark 1994)).  This standard is even higher in employment cases. *See id.* (citing *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001)).

Defendants argue that Plaintiff cannot establish any of the four requisite *prima facie* elements for outrage.  Plaintiff argues in response that "[o]n all four of these elements, there are sufficient

questions of fact which a jury could find in favor of the plaintiff."  (ECF No. 28).  The Court agrees with Defendants that Plaintiff has failed to establish a claim for outrage.

For the first *prima facie* element, Plaintiff argues that Defendants knew their alleged conduct would cause her emotional distress, pointing the Court to the EDPD's sexual-harassment policy and social-media guidelines, as well as to the Arkansas Municipal League's handbook on avoiding lawsuits based on personnel law.  The EDPD's sexual-harassment policy and social-media guidelines do not address whether sexual harassment can cause emotional distress.  The municipal league's handbook does discuss this, but Plaintiff has offered no evidence that Defendants were familiar with the handbook's contents.[16]  Thus, the Court finds that Plaintiff is unable to establish the first element.

For the second *prima facie* element, Plaintiff simply argues that Defendants' alleged actions were "utterly intolerable in a civilized society."  (ECF No. 28).  Plaintiff offers no evidence on the issue.  Plaintiff's conclusory statement is insufficient to meet the high burden imposed by Arkansas law.  *See Bare v. NPC Int'l, Inc.*, No. 09-cv-2092 RTD, 2009 WL 4898317, at *4 (W.D. Ark. Dec. 14, 2009) ("Merely describing the conduct as outrageous does not make it so.") (quoting *Fuqua v. Flowers*, 341 Ark. 901, 907, 20 S.W.3d 388, 392 (2000)).  Thus, the Court finds that Plaintiff cannot establish the second element.

For the third and fourth *prima facie* elements, Plaintiff simply argues that Defendants' alleged actions were the proximate cause of her emotional distress, and that her emotional distress "was so severe that no reasonable person should be expected to endure it."  (ECF No. 28).  She offers no evidence in support of these conclusory statements.  Again, this is insufficient to satisfy the high burden to make a claim for outrage under Arkansas law.  Thus, the Court finds that Plaintiff cannot

---

[16] Plaintiff filed excerpted pages from Separate Defendant White's deposition as an exhibit in support of her brief.  On one of the excerpted pages, Separate Defendant White was asked if he had ever seen the handbook or been provided with it in training.  He responded, "I don't know that I've seen it," and the excerpted page abruptly ended mid-sentence.  (ECF No. 28-2).  Plaintiff did not provide the next page, and the other excerpted pages do not discuss Separate Defendant White's familiarity with the handbook.  Based on this, Plaintiff failed to show that Defendants were familiar with the handbook.

establish the third and fourth elements.

The Court finds that Plaintiff cannot establish the four requisite *prima facie* elements to make a claim of outrage under Arkansas law.  Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be granted as to Plaintiff's outrage claim.

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 20) should be and hereby is **GRANTED**.   Plaintiff's case is hereby **DISMISSED WITH PREJUDICE**.   A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 20th day of January, 2017.


/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

23